# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

**DANNY WILLIAMS**                                                                          **PLAINTIFF**

**v.**                            **No: 5:18-cv-00313 PSH**

**DUSTY DODSON**                                                                  **DEFENDANT**

## MEMORANDUM OPINION

### I. Introduction

Plaintiff Danny Williams, a federal inmate, filed a *pro se* complaint and amended complaint alleging he suffered inhumane conditions as a pre-trial detainee at the Dallas County Detention Center. Doc. Nos. 2 & 4. Williams sued Dallas County Sheriff Stan McGahee and Jail Administrator Dusty Dodson in both their individual and official capacities. Doc. No. 4 at 1-2.

The Court held a bench trial in this matter on October 6, 2021. Charles S. Gibson appeared on behalf of Williams, who was also present. Colin C. Heaton appeared on behalf of McGahee and Dodson (the "Defendants"). Dodson appeared by telephone. At the conclusion of Williams' case-in-chief, the Defendants moved for judgment as a matter of law[1] with respect to Williams' official capacity claims

---

[1] The Court construed the motion as a motion for judgment on partial findings brought under Fed. R. Civ. P. 52(c).

against them and his individual capacity claims against McGahee. Those motions were granted. Williams' official capacity claims were dismissed because he offered no evidence that his treatment at the Dallas County Detention Center was due to a custom or policy of Dallas County. *See* Doc. No. 85. Williams' individual capacity claims against Sheriff McGahee were dismissed because Williams provided no evidence that McGahee was personally involved in his treatment at the Dallas County Detention Center. *Id.* At the conclusion of Dodson's case-in-chief, the Court took Williams' remaining claims against Dodson under advisement. The following constitute findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52(a).

## II.  Complaint Allegations & Trial Testimony

In his original complaint, Williams made various complaints about the Dallas County Detention Center, including allegations that he was held in lockdown from October 21 to October 29, 2018, and was denied running water from October 23 to October 26. Doc. No. 2. In his amended complaint, Williams alleged that he was put in lockdown on October 21, 2018, and left in a "pitch-dark freezing cell with no running or toilet water" from October 23 to October 26.[2] Doc. No. 4 at 4-5. He

---

[2] Before Williams filed this lawsuit, he filed another lawsuit alleging many of the same facts. *See Williams v. Dodson,* Case No. 5:18-cv-00279-JM-JTK. Williams later explained that he only intended to file one case, and his initial complaint in this case was intended to be an amended complaint in the original case. *See* Doc. No. 15. The Court

asserted that he was released from his cell to use the kiosk and to shower on October 24, and that his water was restored on October 26. *Id.* According to his amended complaint, Williams was released from isolation on October 29. *Id.* Williams also claimed that during his incarceration at the Dallas County Detention Center, he was served cold food with gnats on it, that the jail's showers were "full of mold, and the sinks and toilets either leak continually or don't work at all." *Id.* at 5. Williams alleged these conditions caused him to be nauseated and unable to eat, have a mental breakdown, have difficulty breathing, and have an accelerated heart rate. *Id.*

At trial, Williams testified that he was placed in the "hole" at the Dallas County Detention Center because he got into an altercation with another inmate in his pod. Williams explained that the "hole" is an isolation cell that houses no other inmates, whereas a pod holds 12 or 13 inmates. He was allowed to keep his property, including a blanket, with him in the isolation cell. The isolation cell had a platform for a bed, as well as a toilet and sink. The door to the cell was solid, with one window in it that could be covered from the outside.

---

therefore charged Williams only one filing fee for these two cases. *See* Doc. No. 17. The Court takes judicial notice that in his original lawsuit, Williams also alleged that his water was shut off on October 23, 2018, and remained off on October 25, 2018, while he was on lockdown at the Dallas County Detention Center. *See Williams v. Dodson,* Case No. 5:18-cv-00279-JM-JTK, Doc. No. 1. He also alleged in that case that he was on a "hunger strike" because the food was not properly prepared, *id.,* and due to the smell in his isolation cell. Doc. No. 7 at 4.

According to Williams, on the second day he was in isolation, his toilet backed up and overflowed, resulting in the cell flooding with water contaminated with feces. While he was accused of flooding the cell intentionally, Williams denied having done so. Williams initially testified that the flooding in his cell was not cleaned up until the next day, when another officer brought him cleaning supplies. He later testified, however, that the floor to his cell was cleaned about an hour after the overflow.

Williams testified that after his cell was flooded, the water to it was cut off, as were the lights, and he was told that the water would not be restored until Jail Administrator Dodson authorized it. According to Williams, his cell was without water from his second day until his seventh day in isolation, when it was temporarily restored so that he could flush his toilet. Williams initially testified that jail staff provided him some chemicals to clean his cell at that time, but later testified that he was only provided a broom and dustpan. According to Williams, he had no choice but to use the bathroom in his cell between the second and seventh days in isolation, even without running water, resulting in a terrible odor from the unflushed toilet.

Williams testified that he was released from his cell every two days to shower while in the isolation cell. He also testified that on the third day he was in isolation, he was released to use the kiosk where he wrote a grievance. He claimed that he could no longer eat because of the odor, and began to refuse his meal trays. He said

the guards did not bring him a tray at all one day, approximately a week after the water was shut off.

Williams estimated that he was in isolation for 11-13 days total, and with the exception of the seventh day when the water was temporarily restored so he could flush his toilet, he had no water to his cell. At no time, even when released to shower, did he ask to use a different toilet. Williams also complained about other conditions in his isolation cell. He testified that the temperature in the cell was very cold. He wore all of his clothes, however, and became accustomed to the temperature. He also complained about his lights being shut off while in isolation. He testified that the window in the door to the cell was covered, and the cell was completely black with the lights off. He stated, however, that he was able to do his legal work even without lights by sitting next to the slot in the door through which his meal trays were passed. Williams testified that an officer on the night shift turned the lights on for him the last four days he was in isolation. Finally, he testified that after he was released back to a pod, his meals were served cold and uncovered, the toilet leaked, and the shower was moldy.

Dodson testified at trial that he served as jail administrator at the Dallas County Detention Center when Williams was placed in isolation in 2018, and he was responsible for overseeing the safety and security there. He testified that the center's policy provided that an inmate placed in an isolation cell for administrative

segregation was to be released one hour each day, and inmates were also allowed to use the center's kiosk during this time to submit grievances. Dodson further explained that during this hour, inmate cells would be cleaned. He stated that inmates would also be provided cleaning supplies to clean their cells at any time.

Dodson recalled that after Williams was placed in an isolation cell, he attempted to flood the cell by stuffing toilet paper, blankets, and sheets into the toilet and acquiring fresh water, e.g., flushing the toilet.[3] To prevent Williams from flooding the cell again, the water to Williams' cell was shut off. He testified that at Williams' request, the water would be restored long enough to allow him to flush his toilet. According to Dodson, the water was also restored during Williams' daily hour out of the cell to allow it to be cleaned and sanitized. Dodson testified he did not recall turning the lights off in Williams' cell, and that inmates in isolation receive the same meals as the other inmates.

Dodson did not remember visiting Williams personally while he was in isolation, but he does remember that Williams had a lot of complaints during his stay at the Dallas County Detention Center. He was not aware of Williams making any requests to employees there that were not fulfilled.

---

[3] Dodson stated that Williams' actions were captured by video feed, but the video was not preserved. Instead, it was recorded over as a routine matter. He testified that a report was made describing Williams' action in the video. That report was not offered as evidence at trial.

After hearing testimony at trial, the Court entered an order directing defendant Dodson to supplement the record with affidavit testimony and relevant jail records during October 2018. Doc. No. 86. The Court specifically requested additional evidence regarding the time or dates Williams was housed in an isolation cell at the Dallas County Detention Center, the dates of his entire incarceration there, and the times and dates the water and/or lights were shut off/restored while Williams was in isolation. The Court also directed that Dodson provide copies of grievances made by Williams concerning his time in isolation and testimony about the content of the video that allegedly showed Williams flooding his cell after being placed into isolation. Dodson filed a response that attached the affidavit of jail employee Stephen McClellan, daily tower logs, and two grievances made by Williams. *See* Doc. Nos. 87, 87-1, 87-2, and 87-3.

In his affidavit, McClellan stated under oath that Williams was placed in isolation following a fight with another inmate; that while in isolation, Williams flooded his cell; that after flooding his cell, Williams was placed in the recreation room while a trustee cleaned the cell; that after Williams flooded the cell, water to it was turned off to prevent additional flooding; and that "[i]n accordance with protocol, the cell's water was turned on periodically to allow for flushing the toilet and other personal hygiene." Doc. No. 87-1 at 1. McClellan also stated that all inmates are provided cleaning supplies daily and that Williams was provided an

opportunity to shower each day. *Id.* Finally, McClellan testified that while in isolation, Williams was provided food and water from the kitchen daily. *Id.*

Dodson's response to the Court's order for additional evidence refers the Court to attached tower logs in response to the directive to provide evidence that Williams was released for recreation and showers while housed in isolation. Doc. No. 87 at 1. The Court has reviewed the tower logs and, without more explanation, cannot interpret what they establish as to Williams. Finally, in his response, Dodson states that a report regarding the video that allegedly showed Williams flooding his cell "was likely prepared, but cannot be located in off-site storage." Doc. No. 87 at 2.

### III.  Discussion

Pretrial detainees' claims are evaluated under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. *See Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Due process requires that a pre-trial detainee not be punished prior to an adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 537 (1979). The Eighth Circuit Court of Appeals has described the appropriate standard for evaluating pre-trial detainees' due process claims as follows:

> In Bell v. Wolfish, the Supreme Court articulated the standard governing pretrial detainees' claims related to conditions of confinement. The court held that the government may detain defendants pretrial and "may subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." Id. at

> 536–37, 99 S. Ct. 1861. The Court articulated two ways to determine whether conditions rise to the level of punishment. A plaintiff could show that the conditions were intentionally punitive. Id. at 538, 99 S. Ct. 1861. Alternatively, if there is no expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose. Id. at 538–39, 99 S. Ct. 1861. If conditions are found to be arbitrary or excessive, it is permissible to "infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." Id. at 539, 99 S. Ct. 1861.

*Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 907 (8th Cir. 2020). The Court is to examine the totality of circumstances of the inmate's confinement rather than any particular condition in isolation, and the length of time a prisoner is subject to harsh conditions is a critical factor to the Court's analysis. *Id.* at 909 (citing *Smith v. Copeland,* 87 F.3d 265, 269 (8th Cir. 1996)).

### A.     *The Isolation Cell*

Williams alleges that he was held in an isolation cell[4] for a number of days without running water or lights, that the temperatures were cold, that the food was

---

[4] Although Williams complains that he received no due process before his placement in the isolation cell, he acknowledges that he was placed there because he had an altercation with another inmate. In any case, in order to establish a due process violation based on the disciplinary process which results in no loss of life or liberty, an inmate must demonstrate the loss of a liberty interest. *Phillips v. Norris,* 320 F.3d 844, 846 (8th Cir. 2003). A prisoner has no liberty interest in having certain procedures followed in the disciplinary process; rather, the liberty interest arises from the "nature of the prisoner's confinement." *Phillips*, 320 F.3d at 847. No such interest arises unless the conditions of that confinement amount to an "atypical and significant" hardship that would give rise to due process protection as set forth in *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995). For the reasons described herein, the Court finds that Williams did not

served cold, and that he was unable to eat due to the odor in his cell. Viewing the totality of these circumstances and considering the testimony and evidence presented, the Court finds that Williams failed to prove by a preponderance of the evidence that the conditions he experienced constituted impermissible punishment for the reasons described below.

    First, Williams' testimony is rife with contradictions which raise questions about his credibility. For example, he testified at trial that he was held in isolation for 11 - 13 days and had no running water for 8 – 10 days of that time. His trial testimony, however, is inconsistent with the allegations in his complaint and amended complaint, which were also made under penalty of perjury. In those pleadings, Williams alleged that he was in an isolation cell from October 21 – October 29, 2018, a total of eight days, and not the 11 – 13 days he claimed at trial. He also asserted in both complaints that he was without water or light from October 23 – 26, or a total of three days.[5] He testified at trial, however, that his lights were turned back on during the final four days he was in isolation. Additionally, at trial, Williams first claimed that after his toilet initially overflowed, the floor was not cleaned until the following day, leaving him exposed to raw sewage overnight. He

---

suffer atypical and significant hardships while held in an isolation cell at the Dallas County Detention Center.
    [5] The defendant did not offer any evidence at trial or in his response to the Court order directing him to provide additional evidence of the period of time or dates Williams was housed in an isolation cell.

then later testified that his cell was actually cleaned the same day that the toilet overflowed.

Williams also testified that on the seventh day of his isolation, the water was temporarily turned on to allow him to flush his toilet. He initially stated that jail staff provided him some chemicals to clean his cell at that time, but later testified that he was only provided a broom and dustpan. This testimony is also inconsistent with the allegations of the complaint and amended complaint that he was without water only from the third to sixth day of isolation.

Additionally, Williams' credibility is also undermined because he acknowledged he was allowed to shower every other day while he was held in isolation and allowed out of the cell to use the kiosk to submit grievances. Yet, he never asked to use another restroom while he was out of his cell. He states that he did not ask because he believed the water in his cell could simply be turned on. If the conditions in his cell were as poor as he described, it does not make sense that he would not at least request to use another restroom while he was out of his cell.

Given these inconsistencies, the Court questions the credibility of Williams' trial testimony and cannot accept his testimony as truthful. The Court finds that Williams' allegations made under penalty of perjury in two pleadings filed closer in time to the events about which he complains more likely than not represent the number of days he was in isolation. Thus, the Court finds by a preponderance of the

evidence that Williams was housed in an isolation cell between October 21 and 29, 2018 after being involved in an altercation at the Dallas County Detention Center. The Court also finds that if Williams was without running water and light, it was for a period of three days as alleged in his complaint and amended complaint under penalty of perjury.

The Court takes note of Dodson's trial testimony and McClellan's affidavit testimony refuting Williams' allegations and asserting that the water to his isolation cell was turned on daily as needed or requested so that he could flush his toilet. This testimony is more credible than Williams' testimony for several reasons. First, Williams gave conflicting testimony about the conditions of his confinement. Dodson did not. Second, Dodson's trial testimony and McClellan's affidavit testimony are substantially consistent.

For these reasons, the Court makes the following findings of fact:

1. Williams was placed in isolation following an admitted altercation with other inmates.

2. Williams was in isolation from October 21 – 29, 2018, at which time he was returned to a pod.

3. On October 23, 2018, he intentionally flooded his isolation cell by stuffing toilet paper, blankets, and sheets into the toilet and flushing the toilet.

4. Williams' cell was cleaned on the same day it was flooded.

5. Williams' water was shut off after he flooded his cell to prevent him from doing so again.

6. The water to Williams' cell was restored periodically to allow him to flush his toilet.

7. The water to Williams' cell was fully restored on October 26, 2018.

8. The isolation cell in which Williams was placed was cold.

9. Williams was allowed sufficient clothing and coverings, and became accustomed to the temperature.

10. Williams offered no evidence about the specific temperatures in his isolation cell.

11. Williams does not claim any illness or injury related to the temperature of his isolation cell.

12. Williams was not deprived of lighting in his isolation cell.  To the extent he was, though, he had sufficient light to work on legal matters.

13. Williams received the same food while he was in isolation that all inmates at the detention facility received.

14. Although Williams was provided with food trays, he chose to refuse some of them.

15. Williams does not claim any weight loss or ill effects related to the food that was served to him.

Based on these findings of fact, the Court first concludes that the decision to turn off running water for three days with periodic restoration while Williams was in isolation was reasonably related to a legitimate governmental purpose and was not excessive in relation to that purpose. *See Stearns,* 957 F.3d 902. The water to Williams' isolation cell was turned off because he had intentionally flooded his cell. Accordingly, Dodson had a legitimate purpose in turning the water off, e.g., preventing another flooding, which was not "excessive in relation to that purpose." And the water was restored as necessary so that Williams could flush his toilet. Additionally, the water to his cell was off for three days, a short period of time. As stated earlier, the length of time a prisoner is subject to harsh conditions is a critical factor to the Court's analysis. *Id.* at 909 (citing *Smith v. Copeland,* 87 F.3d 265, 269 (8th Cir. 1996)). For these reasons, Williams' claim related to being deprived of running water fails.

The Court further finds that Williams failed to meet his burden of proving by credible evidence that the temperature in his isolation cell was so low that it violated his constitutional rights or constituted punishment. Williams offered no evidence of what the temperature was in his isolation cell at any time and no evidence of any punitive intent related to the temperature in his cell. He offered no evidence that the temperature in the isolation cell was set so low that an intent to punish could be

inferred. In fact, he testified that he became accustomed to the temperature and had sufficient clothing and coverings to warm him. *Id.*

The Court finally concludes that Williams failed to meet his burden of proving by credible evidence that the remaining conditions of his confinement in isolation, as set forth in the findings of fact above, violated the constitution or constituted punishment, or that the conditions were arbitrary or excessive so as to infer an intent to punish. *Id.* He had sufficient light to work on legal matters. He does not claim any illness or weight loss related to the food he was served, and did not prove that the food he was provided was intentionally made cold or unappetizing to punish him in any way. And Dodson's testimony established that all inmates in isolation received the same food trays as did other inmates in the detention facility.

### B.     *Other Conditions at the Dallas County Detention Center*

Williams also alleged that he was subjected to poor conditions in general at the Dallas County Detention Center after he returned to a regular pod following his time in isolation. Specifically, he alleged that he was served cold gnat-infested food; the showers were moldy; and the sinks and toilets constantly leaked. Doc. No. 4 at 5. He reiterated these allegations in his testimony. Williams did not describe how many meals he missed, did not state he lost any weight or suffered any other ill-effects based on the food served, and did not describe any injury or ill effects from the showers or leaking fixtures. He offered no evidence of an express intent by

Dodson to punish him with regard to these conditions. Nor did he offer evidence that the conditions about which he complains were so excessive that the Court could "infer that the purpose of the governmental action is punishment." *See Bell, supra*. Williams failed to prove that his constitutional rights were violated with regard to the general conditions he experienced in the pod. *See e.g., Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996) ("There is a *de minimis* level of imposition with which the Constitution is not concerned.").

### IV.  Conclusion

Plaintiff Williams failed to prove that his constitutional rights were violated. Accordingly, his claims are dismissed with prejudice.

DATED this 18th day of March, 2022.

_____
UNITED STATES MAGISTRATE JUDGE